RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0744-MR

CLINTON J. WOODWARD          APPELLANT

v.         APPEAL FROM WEBSTER CIRCUIT COURT
HONORABLE DANIEL M. HEADY, JUDGE
ACTION NO. 23-CR-00090

COMMONWEALTH OF KENTUCKY        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND L. JONES, JUDGES.

JONES, L., JUDGE: Clinton J. Woodward (Woodward) appeals from a judgment of the Webster Circuit Court memorializing the jury verdict and sentencing him to three-years' imprisonment for one count each of First-Degree Sexual Abuse, Third-Degree Rape, and Third-Degree Sodomy. We affirm the judgment of the Webster Circuit court for the reasons stated herein.

On appeal, Woodward focuses on three areas of the trial where he claims error occurred. The first surrounds Macy Clevidence (Clevidence) who conducted the forensic medical exam of the victim. The second involves allegations of improper bolstering of the victim and Clevidence. The third pertains to the trial court's decision to administer an *Allen*[1] charge to the jury.

## I. STATEMENT OF FACTS

Woodward shared a home with Tasha Little, whom he had been dating for several years, and her two children. On March 14, 2023, Little's daughter, E.H.,[2] was overheard by a teaching assistant as she told a friend she had lost her virginity. At the time, E.H. was sixteen years old. When asked for the identity of her sexual partner, E.H. named Woodward. Woodward was thirty-seven years old.

The following day, Nancy Olson (Olson), a teacher, questioned E.H. E.H. admitted to Olson that Woodward had seen her naked and there had been touching. Over the protests of E.H., the matter was reported to the proper authorities, involving the Kentucky Department of Community Based Services (DCBS).

---

[1] *Allen v. United States*, 164 U.S. 492 (1896).

[2] Pursuant to Kentucky Rule of Appellate Procedure (RAP) 31(B) and Kentucky Court of Appeals Administrative Order 2006-10, to protect the identity of the minor child we will identify her through the use of initials.

Tara Moore (Moore), a DCBS investigator, met with E.H. on March 15, 2023, at the home of her biological father. At trial, Moore testified on cross-examination that E.H. told her Woodward had fondled her breasts and butt "and other things."[3] Moore explained that her role was not to obtain details from E.H., but to determine if further investigation was needed. Based upon the information provided by E.H., Moore scheduled a forensic interview and instructed the parents to refrain from discussing the allegations with the child.

On March 29, 2023, there was a forensic interview (first interview) with E.H. at the Children's Advocacy Center (CAC). At trial, Woodward questioned E.H. about inconsistencies between her initial disclosures to Olson and Moore and the statements made during this interview. Particularly, Woodward asked E.H. to explain why she told Olson there had been no penetration but during the first interview said she had performed oral sex on Woodward and that he had penetrated her with his fingers.

Subsequently, a physical exam of E.H. was scheduled through the CAC. On April 14, 2023, Clevidence conducted the exam. The exam consisted of a brief history followed by a routine physical, then a more detailed discussion of what brought E.H. to the CAC followed by a genital and anal exam using a colposcope for the purpose of magnification and illumination. Clevidence is a

---

[3] Video Record (VR): May 6, 2024, 3:58:07-3:58:12.

licensed and certified advanced practice nurse practitioner in the field of family medicine who has been contracted by the CAC to perform medical examinations of child sexual abuse victims and received specialized training for that purpose.

E.H. admitted to Clevidence that she and Woodward had engaged in both vaginal and anal intercourse and oral sex. Clevidence's medical exam found signs of healed trauma to E.H.'s hymen and anus. A copy of the report prepared by Clevidence was provided to Woodward well in advance of trial. The report contained a brief summary of the history provided by E.H. and a detailed description of Clevidence's physical findings. Based upon those physical findings and the history provided by E.H., Clevidence noted there was "concern for sexual abuse."[4] At trial, that report was admitted into evidence without objection.

As E.H. had previously denied having penetrative intercourse with Woodward, a second forensic interview (second interview) was scheduled at the CAC. Following the second interview, Appellant was indicted on July 12, 2023, as follows:

> Count 1: Prior to March 29, 2023, in Webster County, Kentucky, the above-named Defendant committed 1st Degree Sexual Abuse by knowingly and unlawfully subjecting a minor female for whom he was in a position of authority or special trust to sexual contact.
>
> Count 2: Prior to March 29, 2023, in Webster County, Kentucky, the above-named Defendant committed 3rd

---

[4] Trial Record (R.) at 113.

-4-

Degree Rape by engaging in sexual intercourse with a 16 year[-]old female for whom he was more than 10 years older.

Count 3: Prior to March 29, 2023, in Webster County, Kentucky, the above-named Defendant committed 3rd Degree Sodomy by engaging in deviate sexual intercourse with a 16 year[-]old female for whom he was more than 10 years older.[5]

At trial, E.H. described an incident which occurred on Valentine's Day of 2023. E.H. said she slapped Woodward on the butt and he warned her he would do the same to her if she did it again. She said she repeated her actions a few days later after which he slapped her butt then squeezed her breasts. Following this interaction, E.H. said Woodward repeatedly asked her if she wanted to "mess around."[6] This led to an incident a week or two later when the two of them were home alone in the living room. E.H. said Woodward removed her clothes, touched her breasts, penetrated her vagina with his fingers, put his penis in her mouth, then positioned her on top of him as he penetrated her vagina with his penis. At some point during this interaction, E.H. testified that Woodward changed their positions and penetrated her anus with his penis. After this, he had her follow him to the bathroom and watch as he ejaculated into the toilet.

---

[5] R. at 1-2.

[6] VR: May 6, 2024, 4:49:04-4:51:40.

After this incident, but before March 14, 2023, E.H. said she was putting away laundry in her mother's room when Woodward exited the shower. She said her mother was taking a bath in another area of the home and her brother was playing video games in his room. She testified that Woodward again asked if she wanted to mess around before he removed her clothing. E.H. again described having oral, vaginal, and anal sex with Woodward then watching him masturbate into the toilet.

During cross-examination, Woodward questioned E.H. extensively about her inconsistent prior statements and the evolving nature of her disclosures. E.H. admitted she lied during the first forensic interview. She explained she withheld information during the first interview because she didn't want to "wreck" her family.[7] E.H. said she had been told she couldn't talk to her mother about the allegations until the forensic interview was over, and she wanted to tell her mother what had happened before telling anyone else. E.H. and Little both testified that E.H. made additional disclosures to Little between the first interview and the April 14th medical exam. Little said those disclosures were consistent with the findings of the medical exam conducted by Clevidence.

In addition, E.H. testified she had no prior sexual experience before Woodward. On cross-examination Woodward asked E.H. to confirm she told the

_____

[7] VR: May 6, 2024, 5:05:48.

-6-

first interviewer she had sex with C.W.[8]  E.H. denied having said this, and Woodward did not impeach her testimony.  Woodward also asked Little during her cross-examination to confirm E.H. admitted to having had sex with C.W., but Little also denied E.H. said this.

Once the case was submitted to the jury, after approximately three hours of deliberations, the jury asked if they could watch the two forensic interviews.  The trial court responded:  "No, you/the jury must base your decision upon the evidence submitted."[9]  Shortly thereafter the jury submitted another question: "If we cannot reach a unanimous decision what happens?"[10]  The trial court showed counsel the written question and announced his intent to administer an *Allen* charge.  Both the Commonwealth and counsel for Woodward expressed their verbal agreement with the decision of the trial court.  After the *Allen* charge was administered, the jury deliberated four more hours before reaching a verdict.

Woodward was found guilty of all three charges against him.  The jury recommended a sentence of one-year's imprisonment for the offense of First-Degree Sexual Abuse, three-years' imprisonment for the offense of Third-Degree

---

[8] Woodward did not provide written notice of his intent to pursue this line of questioning as required by Kentucky Rules of Evidence (KRE) 412, therefore there was no hearing and this Court has no information on the age of C.W., but is acting on the presumption that he is a minor. For this reason, we will identify him by initials only.

[9] R. at 121.

[10] R. at 122.

Rape, and three-years' imprisonment for the offense of Third-Degree Sodomy to be served concurrently for a total sentence of three-years' imprisonment. Woodward filed a motion seeking a judgment of acquittal or a new trial. This motion was overruled, and, in its final judgment, the trial court sentenced Woodward in accordance with the jury's recommendation to a total of three-years' imprisonment. This appeal followed.

## II.  ISSUES ON APPEAL

On appeal, Woodward complains of palpable error caused by the Commonwealth's failure to designate Clevidence as an expert witness during pretrial disclosures. Conversely, he also alleges Clevidence lacked the qualifications to provide expert testimony in this case. Woodward argues that Clevidence's testimony was unhelpful to the jury and served only to bolster the credibility of E.H. He further alleges that Clevidence's testimony at trial differed from the findings contained in her report. Woodward admits he failed to bring any of these perceived errors to the attention of the trial court.

Woodward also argues the trial court committed reversible error by "permitting the Commonwealth to bolster [E.H.'s] testimony with her prior consistent statements." Appellant's Brief at 7. In addition, he claims the trial court erred by allowing the Commonwealth to use lay testimony to bolster Clevidence's report.

Finally, Woodward alleges the trial court erred by administering an *Allen* charge which coerced the jury into reaching a unanimous verdict. Though he admits he raised no contemporaneous objection to the trial court's decision, Woodward asks this Court to overlook the lack of objection because the trial court did not allow him the time to do so.

## II.  STANDARD OF REVIEW

To begin, we note that an order denying an acquittal under RCr[11] 10.24 will be disturbed on appeal only if there exists an abuse of discretion. *Johnson v. Commonwealth*, 892 S.W.2d 558, 563 (Ky. 1994). Likewise, a motion for a new trial pursuant to RCr 10.02 may be granted for "any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." RCr 10.02(1). On appeal the trial court's decision also is reviewed for abuse of discretion. *Foley v. Commonwealth*, 425 S.W. 3d 880, 888 (Ky. 2014). "A trial court abuses its discretion when it decides an issue arbitrarily, unreasonably, unfairly, or unsupported by sound legal principles." *Gaither v. Commonwealth*, 521 S.W.3d 199, 205 (Ky. 2017) (citation omitted). This standard applies only to preserved error.

"Under RCr 10.26, an unpreserved error may only be corrected on appeal if the error is both palpable and affects the substantial rights of a party to

---

[11] Kentucky Rule of Criminal Procedure.

such a degree it can be determined manifest injustice has resulted from the error." *Jones v. Commonwealth*, 527 S.W.3d 820, 822 (Ky. App. 2017) (internal quotation marks and citations omitted). "In other words, to deem an unpreserved error palpable, we must consider whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id*. Here, Woodward asks this Court to review any unpreserved errors for manifest injustice.

However, we must distinguish between error which is merely unpreserved and that which is waived or invited. "[W]hen a party fails to raise an issue or otherwise preserve an allegation of error for review, the issue is forfeited." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023) (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)). "Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id*. at 314 (citation omitted). The distinction between forfeiture and waiver affects the standard of review. "The valid waiver of a known right precludes appellate review while a forfeited claim of error may be reviewed for palpable error." *Id.* (citation omitted).

Similarly, "a party is estopped to take advantage of an error produced by his own act." *Robertson v. Commonwealth*, 677 S.W.3d 309, 318 (Ky. 2023) (quoting *Wright v. Jackson*, 329 S.W.2d 560, 562 (Ky. 1959)). And "[i]nvitations

-10-

that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011) (citation omitted).

## III. ANALYSIS

### A. Woodward waived review of any alleged error related to the trial court's administration of the *Allen* charge.

Woodward argues the trial court erred when it chose to administer an *Allen* charge in response to the jury's question: "If we cannot reach a unanimous decision what happens?"[12] Woodward contends the jury was not deadlocked but merely asking a question, and the trial court should have explained that "the jury would be discharged and the case would be tried again." Appellant's Brief at 38. Woodward acknowledges he failed to object, but asks this Court to consider the issue as preserved because "he was never given an opportunity to object." Appellant's Brief at 38.

Woodward did not object. Instead, Woodward verbally affirmed the trial court's decision to administer the *Allen* charge. In addition, Woodward himself described the jury as "hung" in his Motion for Judgment of Acquittal/Motion for a New Trial.[13]

---

[12] R. at 122.

[13] R. at 155.

-11-

An error is unpreserved or forfeited if a party fails to object. *See Gasaway*, 671 S.W.3d at 314 (citations omitted). A forfeited error may still be reviewed by an appellate court to determine whether the error was palpable. *Id.* However, by voicing his agreement to the trial court's decision to administer an *Allen* charge, Woodward not only failed to preserve any alleged error, he waived any error.

"The valid waiver of a known right precludes appellate review. . . ." *Id.* (citation omitted). Thus, we will address Woodward's argument no further.

**B. The trial court did not err in admitting the testimony of Macy Clevidence**.

While Woodward raises multiple allegations of error involving what he believes to be the expert-nature of Clevidence's testimony, he admits he neither raised a pretrial *Daubert*[14] challenge nor a contemporaneous objection during trial. Therefore, we undertake review only for palpable error unless otherwise indicated.

First, Woodward alleges he was unable to make a pretrial *Daubert* challenge to Clevidence because the Commonwealth failed to identify her as an expert witness in order to "smuggle [her] expert opinion into the case." Appellant's Brief at 30. Woodward claims the Commonwealth engaged in

---

[14] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-95 (1993).

gamesmanship, causing him to be unprepared to conduct an effective cross-examination. We disagree.

"The plain language of RCr 7.24(1) clearly requires [a defendant] to first request *in writing* the desired information." *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013) (emphasis added). *Brown* specified "that expert witness information must only be disclosed upon written request." *Id.* (citations omitted). Woodward made no such request.

Nevertheless, by order entered on July 20, 2023, the Commonwealth was directed to provide Woodward with the "results of physical or mental examinations, and of specific tests or experiments made in connection with the particular case, or copies thereof, that are known by the Attorney for the Commonwealth to be in possession, custody, or control of the Commonwealth. For testifying experts, where no written report exists, a written summary of the experts' testimony shall be provided."[15] The Commonwealth complied with the trial court's order.

On July 21, 2023, the Commonwealth agreed to provide Woodward with the "Medical Assessment" conducted at the CAC.[16] Both the report and the notes from that medical assessment clearly bear Clevidence's name followed by

---

[15] R. at 26.

[16] R. at 31.

her certifications of "APRN"[17] and "FNP-C."[18, 19]  Both documents describe abnormal physical findings indicative of healed trauma during the genitourinary exam which, when taken in conjunction with the history provided by E.H., caused Clevidence to repeatedly document her "concern for sexual abuse."[20]  Therefore, Woodward was certainly given notice of Clevidence's identity, her qualifications, and the nature of her testimony.  And Woodward had ample time to review Clevidence's report, request additional information from the Commonwealth, depose Clevidence, present a *Daubert* challenge, or consult his own expert. Woodward certainly had time to prepare for questioning the witness and, in fact, conducted a thorough cross-examination of Clevidence.

While RCr 7.24(3) placed the initial burden on Woodward to request expert disclosures in writing, RCr 7.24(5) placed an additional burden on him to make a timely objection when he believed a discovery violation had occurred. Woodward did neither.

RCr 7.24(5) expressly states:  "[N]one of the provisions of this rule regarding disclosure of evidence relating to expert testimony shall be deemed to

---

[17] Advanced Practice Registered Nurse.

[18] Certified Family Nurse Practitioner.

[19] R. at 112, 113.

[20] R. at 109, 110, 112, 113.

have been violated unless and until the party offering the evidence attempts to introduce it at trial and the opposing party timely objects." There was no objection, thus there was no violation of the rule. Nor is there palpable error as we find no manifest injustice has occurred: Woodward made no written request for the identification of expert witnesses; the Commonwealth complied with the disclosures required by the trial court; and those disclosures included Clevidence's qualifications, her report, her notes, and the nature of her testimony.

Next, Woodward argues the content of Clevidence's report differed significantly from her testimony at trial. Woodward seeks to distinguish the "concern for sexual abuse" contained in Clevidence's written report from her testimony at trial that the medical findings were consistent with vaginal and anal intercourse. We disagree.

Taking in the entirety of Clevidence's notes and report, this is a distinction without a difference. Clevidence's written notes and report recite the history given by E.H.: that she had engaged in oral, vaginal, and anal sex with Woodward and that those interactions were painful. Clevidence goes on to note specific abnormal findings from the genitourinary exam performed on E.H., to express her "concern for sexual abuse," and to recommend E.H. be tested for sexually transmitted diseases. At trial, Clevidence continued to use the phrase "concern for sexual abuse" until explicitly asked if her findings were consistent

with vaginal and anal intercourse whereupon she agreed they were. Woodward raised no objection, and we find no palpable error.

Woodward next claims Clevidence was unqualified to provide an expert opinion. He questions whether Clevidence had the correct training pursuant to 922 KAR[21] 1:580 § 4 (2024) and attaches to his brief a single September 19, 2023 journal article which describes certain deformities of the hymen as merely "a normal variation" and not indicative of sexual abuse. Appellant's Brief at 29.

When an alleged error revolves around the qualifications of an expert witness or the methodology utilized by the expert in forming her opinion, appellate courts typically expect the contesting party to have raised the issue at the trial court level by requesting a pretrial *Daubert* hearing to challenge the reliability of the proffered testimony. Woodward failed to do so, thereby failing to preserve the alleged error. *See Tharp v. Commonwealth*, 40 S.W.3d 356, 367-68 (Ky. 2000). When testimony goes into the record without objection, "[i]t is now too late for appellant to complain." *Sallee v. Ashlock*, 438 S.W.2d 538, 541 (Ky. 1969).

Acknowledging his failure to preserve the alleged error, Woodward seeks palpable error review. In *Tharp*, the Kentucky Supreme Court addressed a similar situation where a *Daubert* hearing was not requested, holding that "[w]e decline to speculate on the outcome of an unrequested *Daubert* hearing, or to hold

---

[21] Kentucky Administrative Regulation.

that the failure to conduct such a hearing *sua sponte* constitutes palpable error." *Tharp*, 40 S.W.3d at 368.  This was reaffirmed in *Davis v. Commonwealth*, 147 S.W.3d 709, 728 (Ky. 2004), *as modified* (Jan. 25, 2005).  In *Davis*, an appellant likewise failed to request a *Daubert* hearing but challenged the qualifications of appellee's expert on appeal.  *Id*.  The Kentucky Supreme Court again declared the failure of the trial court to conduct a *Daubert* review *sua sponte* was not palpable error.  *Id*.

Woodward again claims he was unaware Clevidence would be providing expert testimony; however, as previously addressed, Woodward never brought this to the attention of the trial court.  In *Brown*, though the defendant claimed surprise at the Commonwealth's introduction of expert testimony, the defendant requested both a *Daubert* hearing and additional time to prepare for cross-examination of the witness and his requests were granted.  *Brown*, 416 S.W.3d at 308-09.  Here, Woodward made no such request.

Not only did Woodward fail to notify the trial court of his supposed belief that Clevidence was unqualified to provide expert testimony, Woodward sought expert testimony from her himself.  It was Woodward who described Clevidence as an "expert" in front of the jury.[22]  And it was Woodward who

---

[22] VR:  May 6, 2024, 6:26:32-6:26:35.

erroneously referred to Clevidence as a "doctor" in front of the jury.[23]  Woodward also asked Clevidence a number of questions requiring specialized scientific or medical knowledge beyond the scope of a lay witness, such as asking Clevidence to define the term "estrogenation";[24] and asking whether the trauma Clevidence observed to E.H.'s hymen and anus could have been caused by athleticism,[25] an accident,[26] constipation,[27] or growth hormone therapy.[28]

Kentucky has long upheld the principle:  "[u]nless there may be attributed to every trial judge an omniscience which few possess, it is necessary to impose on the attorney the responsibility of assisting the judge. . . .  He should not be permitted on appeal to claim an abortive trial to which he has materially contributed by failure . . . to assist the trial judge past the pitfall of error."  *Little v. Whitehouse*, 384 S.W.2d 503, 504-05 (Ky. 1964).  Here, Woodward not only failed to object; he invited the alleged error by treating Clevidence as an expert himself. Furthermore, "[a]ny lack of specialized training goes only to the weight, not to the

---

[23] VR:  May 6, 2024, 6:38:38-6:38:40.

[24] VR:  May 6, 2024, 6:34:09.

[25] VR:  May 6, 2024, 6:27:42-6:28:16.

[26] VR:  May 6, 2024, 6:41:45-6:41:48.

[27] VR:  May 6, 2024, 6:36:24.

[28] VR:  May 6, 2024, 6:34:39-6:34:44.

competency, of the evidence." *Washington v. Goodman*, 830 S.W.2d 398, 400

(Ky. App. 1992) (citing *Arndale v. Parndell Peay,* 411 S.W.2d 473 (Ky. 1967)).

Finally, Woodward alleges Clevidence's testimony improperly

bolstered the testimony of E.H., citing *Hoff v. Commonwealth*, 394 S.W.3d 368,

376 (Ky. 2011), for the proposition that "no expert, including a medical doctor, can

vouch for the truth of the victim's out of court statements." Appellant's Brief at

32. Woodward argues Clevidence's testimony that her medical findings were

consistent with sexual abuse was "an endorsement of E.H.'s history." Appellant's

Brief at 33.

Contrary to Woodward's claim, *Hoff* expressly allows statements such

as those made by Clevidence:

> Some of Dr. Calhoun's testimony was clearly proper.
> His statements that B.H.'s injuries were consistent with
> her having sex and with the history she gave him are
> exactly the kind of information that an expert witness is
> meant to testify about. The average juror does not know
> what kind of injuries a child victim of sex abuse is likely
> to have, so expert testimony on this topic "assist[s] the
> trier of fact." KRE 702. In *Stringer v. Commonwealth*,
> 956 S.W.2d 883, 889 (Ky. 1997), this Court considered
> very similar testimony that the child victim had suffered
> some injuries to the hymen and vagina that the testifying
> physician said were "compatible with [the victim's]
> history that she had given me." This Court held that this
> testimony "concerned a subject peculiarly within the
> knowledge of a trained physician and was likely to assist
> the jury in determining whether [the victim] had been
> sexually abused." *Id.* at 892. So these portions of Dr.
> Calhoun's statement were not erroneous.

-19-

*Hoff*, 394 S.W.3d at 375.

The Commonwealth did not ask Clevidence her opinion on the truthfulness of E.H., nor did Clevidence volunteer her opinion on the matter. It was Woodward who elicited such information: "In order to believe that conclusion, we have to believe the person is being truthful when they self-report, is that correct?"[29] Similarly, when Clevidence testified that E.H. did not report any accident which may have caused the trauma to her hymen, Woodward again emphasized the issue of credibility: "So you're relying on the truthfulness of what [E.H.] said?"[30]

We are not saying Woodward erred in his questioning of Clevidence on cross-examination. Attacking the credibility of E.H. was clearly Woodward's trial strategy. However, any statements Clevidence made regarding the truthfulness of E.H. were done so at the behest of Woodward. To the extent any of these statements constituted error, not only was that error unpreserved, it was invited by Woodward. "Because a party is generally estopped from arguing an invited error on appeal," Woodward cannot now claim palpable error occurred. *Tackett v. Commonwealth*, 445 S.W.3d 20, 28 (Ky. 2014).

---

[29] VR:  May 6, 2024, 06:31:20-06:31:26.

[30] VR:  May 6, 2024, 6:29:35-6:29:41.

Woodward also complains that Clevidence's testimony improperly "requires a belief both that [E.H.] had been sexually active, and that [E.H.] had not been sexually active with anyone other than [Woodward.]" Appellant's Brief at 33. First, we note that Woodward's suggestion would require the exclusion of every medical exam in every case where the examiner did not have first-hand knowledge of the events which caused the patient's injury. Second, we find it significant that Clevidence never identified Woodward by name or description in her testimony, nor did she describe any of the sex acts E.H. said occurred between her and Woodward. To the extent that information was included in Clevidence's written report, Woodward waived any objection to the contents of the report by consenting to its admission into evidence. *See Tackett*, 445 S.W. 3d at 28. While Clevidence did testify that E.H. "reported" she had not been sexually active before "this," Clevidence made no statements indicating her belief or disbelief of E.H., and Woodward made no objection.[31] We find no error, palpable or otherwise.

## C. **There was no improper bolstering of Clevidence**.

Woodward asserts the trial court committed reversible error by permitting the Commonwealth to bolster Clevidence through the testimony of

---

[31] VR: May 6, 2024, 06:23:08-06:23:22 (Commonwealth: "Did [E.H.] mention anything about her sexual history that could give an explanation for this?" Clevidence: "She reported to me that she had never been sexually active prior to this.").

unqualified lay witnesses, particularly Little and Detective Matt Jordan (Jordan). We disagree.

Little testified on the second day of trial. E.H. and Clevidence had both testified the day before and Clevidence's report had already been admitted into evidence without objection. On re-direct examination of Little, the Commonwealth asked: "Have you been told what the medical findings are?"[32] Following Woodward's objection, a bench conference ensued.

> Woodward's Counsel: I'm going to object to the hearsay, Judge. They had the medical expert here yesterday and they were adamant about releasing her. If they want to get this information in, they can recall her. She doesn't need to be –
>
> Trial Court: The question is –
>
> Commonwealth: The whole report's in. I can show her the report if we'd rather do it that way.
>
> Woodward's Counsel: No, I don't want to do it that way. That's hearsay.
>
> Commonwealth: It's not hearsay. It's Commonwealth's Exhibit B.
>
> . . . .
>
> Woodward's Counsel: The question is she should not be commenting on medical reports.
>
> Trial Court: The question is has she been told, is that correct? What was your question?

---

[32] VR: May 7, 2024, 08:57:17-08:57:27.

-22-

. . . .

Woodward's Counsel:  Are you aware of the findings is what he asked her.

Trial Court:  The next question is going to be are those findings consistent with what she told you?

Commonwealth:  Of course.  Or was there any reason from what [E.H.] told you that you later found out from the medical exam to give you reason to doubt [E.H.]?  He spent a lot of time talking about –

Woodward's Counsel:  The medical expert is available to be recalled at one o'clock today. . . .

Commonwealth:  I'm not asking her to state what the conclusions are.

Woodward's Counsel:  A mother should not be commenting on a medical report.

. . . .

Trial Court:  She would be informed of what the medical report would say.  You're not asking her about the details of it?

Woodward's Counsel:  Judge, the medical report is in.  It's in evidence.  He can tender it to the jury during deliberations.

Commonwealth:  I'll tender it to the witness.

Woodward's Counsel:  Having an MRI[33] tech and a mother stand up and bolster a finding is improper.

---

[33] Magnetic Resonance Imaging.  At the time of trial, Little was employed as an MRI technician, but this was only noted in passing and there was no attempt by the Commonwealth to develop Little as an expert witness.

Commonwealth:  You attacked her credibility so we're gonna bolster a little bit.

Woodward's Counsel:  I'm done attacking credibility.

Commonwealth:  I'm not done bolstering it.

Woodward's Counsel:  Your honor, I can attack credibility at any time.

Commonwealth:  Once you attack it, it's fair game.

Trial Court:  I'll allow the question in limited fashion to what she can testify to as to what she knows.  I'll allow the question.  I mean, I don't want her to dig into the details, it's not her report.

Commonwealth:  There's evidence of trauma to her anus.  That's clear.  There's evidence of trauma to her –

. . .

Woodward's Counsel:  That's hearsay.

. . . .

Woodward's Counsel:  You have the report.  You have an available witness who prepared the report.  This is improper.  You don't need to bolster or you shouldn't be allowed to bolster a report through a witness who –

Commonwealth:  If you didn't want her bolstered, you should not have attacked her credibility.

Woodward's Counsel:  This report has nothing to do with her credibility, it's about you improperly trying to bolster a report that you have an available witness for.

Commonwealth:  I'm not trying to bolster the report.

-24-

Trial Court:  I'm gonna note the objection.  I'll note the objection for the record, and I'll allow it in limited capacity.[34]

Thereupon, the bench conference ended and the Commonwealth continued to question Little.

Commonwealth:  And you were made aware that there was evidence of trauma in two different places on her body?

Woodward's Counsel:  Objection. Continuing Objection.

Trial Court:  The court will note the objection, note the continuing objection.

. . . .

Commonwealth:  You were made aware that there was trauma to both the anus and vagina, is that true?

Little:  Yes.

Woodward's Counsel:  Objection.

Commonwealth:  Is that consistent with what [E.H.] told you on March –

Woodward's Counsel:  Same objection.

Trial Court:  I'll note the objection.  Overrule it.

Commonwealth:  Is that consistent with what she told you on March 29th, even prior to having been examined by the medical examiner?

---

[34] VR:  May 7, 2024, 08:57:29-09:00:39.

Little: Yes.[35]

Woodward argues that Little should not have been allowed to describe the medical report. She did not. Nor did Little opine on Clevidence's methodology, the accuracy of her findings, or her credibility. Essentially, Little was being asked to confirm whether E.H. admitted to Little prior to the medical exam that she had engaged in vaginal and anal intercourse with Woodward. This was the Commonwealth's attempt to rehabilitate E.H. whose credibility Woodward had attacked repeatedly. There was no unqualified medical expert opinion sought from Little and no bolstering of Clevidence occurred.

Woodward also alleges Detective Jordan improperly bolstered Clevidence's report in the following exchange.

> Commonwealth: In the second [CAC] interview, was it consistent with the findings of the medical examination?
>
> Jordan: Yes.
>
> Woodward's Counsel: Objection. May we approach?
>
> (Bench Conference Begins.)
>
> Woodward's Counsel: Your honor, I'm going to ask for an admonishment to the jury. This gentleman is not qualified to give a medical opinion nor ascertain whether or not the report generated by the medical personnel is correct. Once again, we're attempting to bolster a physical examination he's not party to nor did he prepare.

---

[35] VR: May 7, 2024, 09:01:00-09:01:41.

Commonwealth:  We're not bolstering the physical examination.

Woodward's Counsel:  Yes, you are.

Commonwealth:  We're bolstering her testimony.  That it's consistent with her second interview.

Woodward's Counsel:  What?  You're asking him about a medical exam and then you ask if it's consistent.

Commonwealth:  Mm.  Hm.

Woodward's Counsel:  No.

Trial Court:  I'll sustain the objection to form.  You can rephrase.[36]

Neither party asked the trial court for clarification.  There was no renewed request from Woodward to strike Jordan's testimony, admonish the jury, or provide a limiting instruction, and the Commonwealth moved on to a different line of questioning.

"To distinguish lay and expert testimony, the key question is not whether [the witness] is an expert; it is whether he rendered any opinions that could be deemed expert opinions."  *Mendez v. Commonwealth*, 733 S.W.3d 332, 339 (Ky. 2025) (quoting *Khani v. Alliance Chiropractic*, 456 S.W.3d 802, 807 (Ky. 2015)) (internal quotation marks omitted).  Whether Jordan's testimony that there was consistency between Clevidence's findings and E.H.'s second interview

---

[36] VR:  May 7, 2024, 09:32:58-09:33:49.

-27-

is clearly an expression of his opinion, "[t]he introduction and reliability of the evidence is determined not by asking whether the *witness* is lay or expert, but, instead, by asking whether the *testimony* to be offered is lay or 'scientific, technical, or other specialized knowledge.'" *Id*. (quoting KRE 701 n.1 (Evidence Rules Review Comm'n)).

Like Little, Jordan was not asked to describe Clevidence's findings, to critique those findings or Clevidence's methodology, or to opine on the credibility of Clevidence. Nor did Jordan repeat the testimony or the prior statements of Clevidence. "Lay opinion testimony admissible under KRE 701 is described by Professor [Robert] Lawson as 'little more than a shorthand rendition of facts that the witness personally perceived.'" *Id*. (quoting Robert G. Lawson, *Kentucky Evidence Law Handbook* § 6.05[2][a], 416). That is what occurred here. Jordan, the investigating officer, compared the statement of the victim to the findings of the medical examiner and, believing them consistent, made the decision to bring charges against Woodward. This was Jordan's observation and required no specialized medical skill or knowledge. This was not expert testimony, it was not a comment on the truthfulness of E.H. or the competency of Clevidence, and it was not reversible error.

**D. There was no improper bolstering of the victim, E.H.**

Woodward argues the trial court erred by allowing the Commonwealth to bolster the testimony of E.H. through her prior consistent statements. Woodward claims to have preserved this issue for review by objecting to the introduction of such evidence during the testimony of Little and Detective Jordan. However, as documented above, Woodward's objections were based on what he believed to be the improper bolstering of Clevidence, not E.H.

The appellate courts of the Commonwealth have repeatedly declared: "When the grounds of the argument are 'different from those asserted in the court below, [they] are not properly preserved for appellate review.'" *Pons v. Commonwealth*, 673 S.W.3d 813, 817 (Ky. App. 2023) (quoting *Daugherty v. Commonwealth*, 572 S.W.2d 861, 863 (Ky. 1978)). Nevertheless, we will review for palpable error.

Woodward contends the Commonwealth impermissibly bolstered the testimony of E.H. by asking Little, Jordan, and Moore whether statements made by E.H. were consistent with the findings of the medical exam. To clarify, "[b]olstering occurs when a person speaks directly of the character for truthfulness of a witness." *Finch v. Commonwealth*, 681 S.W.3d 84, 96 (Ky. 2023) (internal quotation marks and citations omitted). While bolstering is generally impermissible, when the credibility of a witness has been attacked, a party may

introduce evidence to rehabilitate the credibility of that witness. KRE 608(2). However, that rehabilitation evidence is subject to limitations.

Woodward claims one of those limitations is found in KRE 801A(a)(2). The crux of Woodward's argument alleges the trial court allowed the Commonwealth to bolster E.H. in violation of KRE 801A(a)(2), which prohibits the introduction into evidence of a witness's prior consistent statement unless that statement is being "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" Woodward argues he "never alleged 'recent fabrication' [because] he claimed [E.H.'s] statements were a lie from the start." Appellant's Brief at 17. He relies on *Smith v. Commonwealth*, 920 S.W.2d 514, 517 (Ky. 1995), where the Kentucky Supreme Court reversed a defendant's conviction after finding the trial court improperly allowed the investigating detective to recite at trial what the victim had told him during the course of his investigation.

We distinguish *Smith* from the case *sub judice* in several ways. First, the error in *Smith* was preserved and, therefore, not subjected to the more rigorous standard of palpable error review. *Id*. at 516. Second, in *Smith,* the detective provided "extensive testimony [which] reiterated that to which [the victim] had already testified." *Id*. Here, the testimony was fleeting and no witness repeated the details of E.H.'s out-of-court statements. Third, in *Smith*, the Court was being

asked to compare apples to apples; that is, two statements made by the victim: her in-court testimony and her statement to the detective. Here, Woodward asks us to compare apples to oranges: the victim's second forensic interview and the medical exam performed by Clevidence. Fourth, unlike in *Smith*, Woodward opened the door for the Commonwealth to rebut his attacks on the credibility of E.H. *See id.* at 517.

Kentucky courts have taken a broad view of KRE 801A(a)(2)'s requirement of a "recent fabrication." Returning to *Finch*, the Kentucky Supreme Court reviewed a defendant's unpreserved allegation that the trial court impermissibly allowed a prior consistent statement from the victim and found no error had occurred. *Finch*, 681 S.W.3d at 96. The Court noted that "Finch's sole defense was that [the victim] lied about the rape and that it never occurred, and his defense counsel implied that [the victim] was lying about the rape during its opening statement. . . . The testimony was therefore permissible under KRE 801(A)(a)(2) (sic) and no error occurred." *Id*.

Here, Woodward did far more than "imply" E.H. was untruthful in his opening statement. Twice in his opening statement, Woodward's counsel told the jury: "We are here because someone lied."[37] He told the jury E.H. "has a history

---

[37] VR: May 6, 2024, 2:32:05-2:32:17.

of making things up" and "telling falsehoods" and that her parents didn't believe her.[38]

When Moore, the DCBS investigator, took the stand, Woodward asked her if "[E.H.] has been known to make things up in the past?"[39] Woodward also asked whether Moore was aware that *years* prior to the allegations against him, E.H. falsely accused her stepmother of physical abuse.[40] In addition, Woodward asked Moore if there were inconsistencies in the statements given by E.H. He asked if the second interview with the CAC was necessary because "[E.H.] said she lied, didn't she?"[41] And Woodward concluded his questioning by asking the witness, "We heard earlier this child didn't want this reported. Why should we believe [E.H.] now?"[42]

During the cross-examination of E.H., Woodward asked: "At what point did your story change from he never actually penetrated me, he had only seen me naked and there was a lot of touching?"[43] Woodward also asked E.H. to

---

[38] VR: May 6, 2024, 2:18:22-2:18:30.

[39] VR: May 6, 2024, 4:06:25-4:06:27.

[40] VR: May 6, 2024, 4:06:40-4:06:59.

[41] VR: May 6, 2024, 4:11:15-4:11:57.

[42] VR: May 6, 2024, 4:18:55-4:19:05.

[43] VR: May 6, 2024, 5:34:08-5:34:16.

explain various inconsistencies in her statements to her friend, her teachers, and the forensic interviewer. Again, he asked: "At some point your story changed from what you had told Mrs. Olson – that Mr. Woodward had never penetrated you, he had only seen you naked and that there was touching. And at some point you disclosed to who that it was not actually correct?"[44] There was an objection from the Commonwealth followed by a heated exchange. Woodward responded to the objection by arguing he was entitled to impeach E.H. with prior inconsistencies. Woodward also asked E.H. about a sexual encounter with another person (C.W.), which she denied. At the conclusion of E.H.'s testimony, Woodward again emphasized that E.H. admitted she had lied during her first interview.

When Little took the stand, Woodward continued his attacks. He asked Little about a list she helped prepare the night he first learned of the abuse allegations made by E.H. This list supposedly contained multiple lies E.H. had told over the course of her lifetime.[45] Presumably quoting from this list, Woodward asked Little whether E.H. had ever said she was raped in a Walmart bathroom.[46] Little denied this. He asked Little whether E.H. ever alleged she was

<hr>

[44] VR: May 6, 2024, 5:36:23-5:36:37.

[45] VR: May 8, 2024, 8:52:12-8:52:17.

[46] VR: May 8, 2024, 8:53:09-8:53:14.

born with a penis that Little cut off.[47]  Little again denied this.  He asked Little

whether E.H. had admitted to having sex with C.W., which Little again denied.[48]

Finally, he asked about E.H.'s allegations of physical abuse against her stepmother,

which Little admitted to having heard from E.H.'s father, but not from E.H.  "So,"

Woodward concluded, "[E.H.] didn't tell you everything, is that what your

testimony is?"[49]

       As listed only partially here, Woodward's attacks on the credibility of

E.H. were numerous, extreme, and included insinuations that E.H.'s story changed

over time and changed based on the findings of the medical exam.  Therefore, even

if the Commonwealth's questioning of witnesses regarding the consistency

between the medical exam and E.H.'s second interview constitutes a prior

consistent statement, it was permissible under *Finch*'s application of KRE

801A(a)(2) to rebut Woodward's repeated attacks on E.H.'s credibility.

       This is especially true of Little's testimony, where she confirmed

during her redirect examination – after being subject to multiple attacks on her own

credibility and daughter's – that E.H. admitted to having had anal and vaginal sex

with Woodward *prior* to the medical exam with Clevidence.  This clearly falls

---

[47] VR:  May 8, 2024, 8:53:47-8:53:50.

[48] VR:  May 8, 2024, 8:55:20-8:55:30.

[49] VR:  May 8, 2024, 08:54:24-08:54:30.

within the permissible boundaries of both KRE 801A(a)(2) and *Finch*, 681 S.W.3d at 95.

Woodward also points this Court to the case of *Dickerson v. Commonwealth*, 174 S.W.3d 451, 472 (Ky. 2005), in which the Kentucky Supreme Court stated: "We perceive no conceptual distinction between testimony that repeats the witness's prior [statements] verbatim and testimony that the witness previously made statements that were consistent with her trial testimony." However, not only is this dicta from the *Dickerson* Court, but the Court also noted such testimony was not improper when offered to rebut "an express or implied charge against the declarant of recent fabrication or improper influence." *Id*. Nor did the witnesses here claim E.H.'s trial testimony was consistent with her prior statements. And, most importantly, Woodward neglects to point out that the *Dickerson* Court found no manifest injustice had occurred from the admission of the challenged testimony. *Id*. at 471.

Furthermore, we look to the opinion of the Kentucky Supreme Court in *James v. Commonwealth*, 360 S.W.3d 189 (Ky. 2012). James claimed the trial court erred by allowing the investigating detective to testify regarding prior consistent statements made by the victim which constituted "inadmissible hearsay used only to bolster [the victim's] credibility." *Id*. at 206. On review, the Supreme

Court disagreed with James and, citing facts remarkably similar to the case at hand,

ruled as follows:

> Throughout the trial, [James] noted inconsistencies in the victim's story between the two interviews she gave to police, and between those interviews and what she told other people. Specifically, he asked the victim herself and the police detective who interviewed her about inconsistencies. On [redirect] of the detective, the prosecutor asked whether the victim's story had changed with regard to whether [James] had punched her, kicked her, raped her, or digitally penetrated her. The detective said there had been no contradiction. [James] then objected, which the trial court overruled.
>
> He now complains that the statements were inadmissible hearsay used only to bolster [the victim's] credibility. The Commonwealth argues that the statements were prior consistent statements under KRE 801A(a)(2).
>
> To the extent that the statements were hearsay, or at least out-of-court statements, they were admissible. The statements were offered solely to rebut [James's] claim that the victim's story had changed, had been inconsistent, and had been shown to be partly false, all of which tended to show generally that she was a liar. In fact, the statements came in during redirect very shortly after the defense's cross-examination about that very subject. In this context, "the statement had some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with [her] trial testimony." *Noel v. Commonwealth*, 76 S.W.3d 923, 929 (Ky. 2002)[50] (quoting *United States v. Ellis*, 121 F.3d 908, 920 (4th Cir. 1997)).

---

[50] *Noel v. Commonwealth*, 76 S.W.3d 923, 929 (Ky. 2002), *declined to follow on other grounds in Mason v. Commonwealth*, 559 S.W.3d 337 (Ky. 2018).

In such a case, the statement is not admitted under KRE 801A(a)(2) as a prior consistent statement. Indeed, KRE 801A(a)(2) does not even address this scenario, as "[i]t is silent with respect to the propriety of using evidence of prior consistent statements for other purposes (most notably for rehabilitation after impeachment that does not involve a claim of recent fabrication or improper influence [or] motive)." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.10[3], at 581 (4th ed. 2003). Instead, the statement is admitted as non-hearsay because it is offered not for the truth of the matter but "to rehabilitate . . . credibility." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 730 (6th Cir. 1994); *see also* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.10[3], at 583 (4th ed. 2003) ("In these situations, of course, the prior statement would have to be used for credibility and not substantive purposes (there being no applicable hearsay exception), and the opposing party would be entitled to a limiting instruction to that effect upon request.").

In this case, the statements were offered only to rehabilitate [the victim's] credibility, which had been attacked by the defense with claims that her story changed in the past and she had demonstrably lied. "The trial court has greater discretion to admit prior consistent statements to rehabilitate an impeached witness, by clarifying or explaining [her] prior statements alleged to be unreliable, than if the statements are offered for their truth under Rule 801(d)(1)(B) [the federal equivalent of KRE 801A(a)(2)]." *Engebretsen*, 21 F.3d at 730. The trial court did not abuse its discretion in admitting the testimony.

*James*, 360 S.W.3d at 205-06.

Here, Woodward's defense was to attack the credibility of E.H. by attacking her maturity, her intellectual ability, her prior falsehoods, her sexual

-37-

history, and her prior inconsistent statements. Woodward accused E.H. of lying on multiple occasions. Rehabilitation of the witness was allowed under both KRE 608 and KRE 801A(a)(2). In none of the exchanges cited by Woodward did the witnesses vouch for the credibility of E.H., they did not repeat the details of the statements made by E.H., and they did not claim her out of court statements were consistent with her trial testimony. Nor did Clevidence's medical report – which was being compared to E.H.'s prior statements – opine on the credibility of E.H. or the culpability of Woodward.

While Woodward admits that none of the witnesses was asked whether the prior statements of E.H. were consistent with her testimony at trial, he claims comparing her prior statements to the medical report must be deemed erroneous because it gives "the imprimatur of scientific credibility to the statements" and was "clearly offered to prove [E.H.'s] trial testimony was true because it was consistent with her prior statements, and consistent with the medical report." Appellant's Brief at 13. This is ultimately a matter of weight and relevance, not admissibility, and we find the trial court did not err in admitting the evidence.

## IV. CONCLUSION

Having considered the parties' extensive arguments and citations to authority, we have only addressed the arguments we deemed most pertinent and

-38-

find any remainder to be without merit, irrelevant, or redundant. *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021). Therefore, based on the foregoing, we affirm Woodward's convictions of First-Degree Sexual Abuse, First-Degree Rape, and First-Degree Sodomy; and we affirm the Judgment and Sentence entered by the Webster Circuit Court on June 20, 2024, sentencing Woodward to a total of three-years' imprisonment on those convictions.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Timothy G Arnold
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Sarah Benedict
Assistant Solicitor General
Frankfort, Kentucky